UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN REGINALD MCGATHON,

    Plaintiff,

v.

D PETROVIC, et al.,

    Defendants.

Case No. 14-cv-00028-JSC

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Dkt. No. 28

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 claiming that officials at San Quentin State Prison inadequately investigated disciplinary charges against him. The Court reviewed the complaint and, after reconsideration, found that, when liberally construed, it states a cognizable claim for the violation of Plaintiff's right to due process. Defendants were served by the United States Marshal, and they have filed a motion for summary judgment. Plaintiff filed an opposition, and Defendants have filed a reply brief. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

In support of their motion, Defendants have submitted the records of the disciplinary proceedings and declarations by prison officials involved in those proceedings. Plaintiff has submitted similar documents, as well as his own declaration and a verified complaint.

On October 10, 2011, Defendant Sergeant Petrovic responded to a fight at San Quentin between Plaintiff and his cellmate Jeffrey Coley; when Petrovic arrived at their cell, he saw that Coley was bleeding "profusely" from his face and mouth. (Petrovic Decl. ¶¶ 3-4, Exh. A.) The

other inmates in the area were lying on the ground or pointing at Plaintiff who was punching his fist into his hands. (*Id.* ¶ 4.) Plaintiff was subdued by other officers, and he told Petrovic that he had attacked Coley because he "was stressed out but I'm sorry." (*Id.*) Coley was taken to the medical clinic where he told medical staff that he was hit with a lock, and he was treated for cuts around his mouth. (Arnold Decl. Exh. A. at 6.) Another officer confiscated the lock from Plaintiff. (Petrovic Decl. Exh. A.) Petrovic prepared a Rules Violation Report on a "CDC 115" form, also known as an "RVR" or a "115", charging Plaintiff with battery with a deadly weapon (a lock). (*Id.* ¶ 5, Exh. A.) Petrovic subsequently received confidential information from an informant that Plaintiff had hit Coley with a lock; this informant had previously provided accurate information to prison officials. (*Id.* ¶ 6.)

Plaintiff asserts that he did not hit Coley with a lock; rather, he felt threatened by Coley, there was a brief struggle, and he punched Coley in the face. (Opp. at 2.) He then went to the back wall of the cell, and Coley used one of Plaintiff's shirts and some toilet paper to staunch the bleeding from his nose. (*Id.*) Plaintiff denies punching his fist into his hands. (*Id.*)

The day after the incident, Plaintiff was placed on administrative segregation and transferred to San Quentin's Secured Housing Unit ("SHU") pending further investigation and a hearing on the charges. (Erickson Decl. ¶ 5, Exh. B.) Plaintiff requested that the disciplinary hearing be postponed until the District Attorney decided whether to prosecute. (Dkt. No. 1 at 16.)[1] According to Plaintiff, the possibility that he would be prosecuted for what would be his third "strike" offense caused his blood pressure to "spike" to 147/98, and he continues to take high blood pressure medication. (Opp. at 4.) Plaintiff is a participant in the prison's Mental Health Services Delivery System at the CCMS level of care. (Petrovic Decl. Exh. A; Lee Decl. Exh. B.)

The District Attorney declined to prosecute Plaintiff, and Defendant Lieutenant Arnold held a disciplinary hearing on December 9, 2011. (Arnold Decl. Exh. A at 4, 9.) Plaintiff had

---

[1] The voluminous attachments to the complaint are not consecutively paginated. Therefore, the Court cites to the volumes and page numbers assigned when they were filed in the Court's electronic case filing system. The complaint and attachments were broken into three parts, numbered as Docket No. 1 with "Attachment 1" and "Attachment 2." These parts are cited herein as Dkt. Nos. 1, 1.1 and 1.2, respectively.

received notice of the charges and hearing more than 24 hours earlier, and indicated that he was ready to proceed. (*Id.* at 4-5.) Plaintiff was provided a staff assistant (Officer Phillips, who is not a defendant) and an investigator (Defendant Alvarez) to help him prepare for the hearing. (*Id.* at 5-8.) On October 25, 2011 they met with Plaintiff before the hearing, to confirm that Plaintiff understood the charges, take his statement, and see if he needed assistance. (*Id.*; Alvarez Decl. ¶¶ 4, 6.) At Plaintiff's request, Alvarez interviewed four inmates, but each stated that he had not witnessed the incident. (Alvarez Decl. ¶ 4, Exh. A at 7.) Alvarez relayed this information to Arnold (the hearing officer). (*Id.*) Plaintiff states that he told Alvarez that these witnesses could not have been elsewhere in the prison at the time of the incident, as they claimed, because there was a "lockdown" requiring them to be in their cell areas at the time.[2] (Opp. at 9-10.) Plaintiff further states that he handed Arnold an envelope with documents at the hearing, but Arnold did not review them.[3] (Opp. at 8.)

At the hearing, plaintiff stated, "I never hit him with a weapon, he pushed me and I protected myself." (Arnold Decl. ¶ 8, Exh. A at 5.) Arnold found Plaintiff guilty of violating prison rules by committing battery on an inmate with a deadly weapon (a lock) based on Petrovic's rules violation report, an incident report, Coley's statement to medical staff, Coley's injuries, Plaintiff's statements to Petrovic and at the hearing, and Alvarez's report. (*Id.* Exh. A at 5-7.) Plaintiff was assessed a forfeiture of 360 days of good time credits, verbally reprimanded, and referred for assessment whether he should serve a term in the SHU. (*Id.* at 6.)

Plaintiff appealed the disciplinary findings, and on January 26, 2012, Defendant Associate Warden Foss vacated them and ordered a new RVR and hearing because there was confidential information that was not considered at the hearing. (Decl. Foss ¶ 4, Exh. A.)[4] A new RVR was prepared the same day, and a second disciplinary hearing was held on February 25, 2012, by

---

[2] Plaintiff asserts his administrative appeal of the disciplinary proceedings establishes that he also requested the witnesses also be present at this hearing. (Opp. at 9.) That finding was made about his second disciplinary hearing, discussed below, however, not this first hearing. (Dkt. 1.1 at 32.)
[3] Plaintiff does not describe what was in those documents.
[4] Although Foss does not say what the confidential information was, it appears from the subsequent hearing that it was the statement from a confidential informant to Petrovic that Plaintiff hit Coley with a weapon. (*See* Decl. Alvarez Exh B. at 7.)

Lieutenant Larkins (not a defendant). (Lee Decl. Exh. B at 10-13.) Plaintiff was again given notice of the charges more than 24 hours prior, and at the hearing he confirmed that he was prepared to proceed. (*Id.* at 10-11.) Plaintiff was provided with a new staff assistant, Officer France, as well as Defendant Alvarez as an investigator, and they met with Plaintiff prior to the hearing to review the charges, take his statement and offer assistance. (*Id.* at 10-11, 17, 20; Alvarez Decl. ¶ 6.) Plaintiff requested that Alvarez interview Coley and another inmate, Mainor. (Alvarez Decl. Exh. B at 9.) Coley said that Plaintiff hit him with a finger through the lock and the body of the lock inside his clenched fist, and Mainor reported Coley saying that he did not understand why Plaintiff had hit him with a weapon. (*Id.*) France was present at the hearing as well. Plaintiff admitted punching Coley, but in self-defense and not with a lock. (*Id.* at 6.) Larkins found Plaintiff guilty of battery with a deadly weapon (a lock) based upon the RVR by Petrovic, the statements from Coley, Mainor and Plaintiff to Alvarez and Petrovic, Plaintiff's statement at the hearing, Coley's injuries and statements to medical staff, and the confidential information provided to Petrovic. (*Id.* at 6-8.) Plaintiff was again assessed a forfeiture of 360 days of time credits and referred to other prison officials to assess whether he should be placed in the SHU. (*Id.* at 8.)

On March 15, 2012, Coley retracted his story by telling Officer France that Plaintiff had never hit him with a lock. (Dkt. 1.2 at 20; *see also* Lee Decl. Exh. B at 9.) Plaintiff states that he gave this retraction to Foss "around March 2012," and to Defendant Warden Chappell "around April 2012." (Dkt. 1 at 3; *see also* Opp. at 13.) On March 26, 2012, Plaintiff included Coley's retraction in his in his administrative appeal of his second disciplinary hearing. (Opp. at 10; Lee Decl. Exh. A.) Defendant Lieutenant Lee, who reviewed the appeal at the second level of review (the first level was bypassed), interviewed Plaintiff and told him he would investigate the charges. (Lee Decl. Exh. B.) Plaintiff states that he informed Lee about Coley's retraction. (Opp. at 11.) Lee denied the appeal on April 27, 2012. (Lee Decl. Exh. B.) Plaintiff appealed the decision to the third level of review. Petitioner's staff assistant was thereafter changed from France to Correctional Officer Valdez. (Opp. at 11.)

On June 27, 2012, Coley indicated in writing that he no longer considered Plaintiff an

4

1    enemy.  (Briggs Decl. Exh. D at 35.)  On August 15, 2012, Plaintiff was transferred from the San
2    Quentin SHU to California State Prison, Solano ("Solano").  (Cervantes Decl. ¶ 6.)  On November
3    16, 2012, plaintiff's appeal was granted at the third level of review.  (Dkt. No. 1.1 at 31-33.)  The
4    reasons for granting the appeal were that Larkins did not adequately address the reliability of
5    confidential information, Larkins did not indicate whether a staff assistant (in addition to the
6    investigator Alvarez) had been present during the witness interviews, Plaintiff did not have at least
7    24 hours of preparation time with the staff assistant, the witnesses Mainor and Coley were not
8    present at the hearing despite Plaintiff's requests, and there was an incorrect date in the re-issued
9    RVR.  (*Id.* at 31-32.)  That RVR was therefore vacated, and ordered reissued and reheard for a
10   third time.  (*Id.* at 32-33.)

11   After a new RVR was issued, a third disciplinary hearing was held at Solano by Lieutenant
12   Richardson (who is not a party) on January 31, 2013.  (Dkt. No. 1.2 at 15-21.)  At the hearing,
13   Richardson found Plaintiff guilty of the lesser-included offense of fighting with another inmate,
14   and no credit loss or SHU term was assessed.  (*Id.* at 21.)  Plaintiff agreed with this decision.  (*Id.*
15   at 57-58.)  He was ordered reprimanded and counseled, and he was not required to forfeit any
16   good time credits.  (*Id.* at 21.)

**DISCUSSION**

18   **A.    Standard of Review**

19   Summary judgment is proper where the pleadings, discovery and affidavits show that there
20   is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a
21   matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of
22   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986).  A dispute as to a material
23   fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the
24   nonmoving party.  *Id.*

25   The moving party for summary judgment bears the initial burden of identifying those
26   portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine
27   issue of material fact.  *Celotex Corp.v. Cattrett*, 477 U.S. 317, 323 (1986).  When the moving
28   party has met this burden of production, the nonmoving party must go beyond the pleadings and,

5

1 by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for
2 trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of
3 material fact, the moving party wins. *Id.*

4 At summary judgment, the judge must view the evidence in the light most favorable to the
5 nonmoving party: if evidence produced by the moving party conflicts with evidence produced by
6 the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving
7 party with respect to that fact. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014).

**B.     Analysis**

Plaintiff claims that Defendants' investigation of his fight with Coley was ineffective and unprofessional, which caused him to undergo disciplinary proceedings for an offense (battery with a deadly weapon (lock)) greater than the offense he actually committed (fighting). (Dkt. 1 at 3, Opp. at 4-6.) Plaintiff asserts that as a result of Defendants' errors, he suffered high blood pressure, spent ten months in the SHU, lost his prison job, and was eventually transferred to another prison and placed into higher security environment. (Dkt. 1 at 3; Opp. at 2-4.) He seeks monetary damages, including "back pay" from March 2012 (when Coley stated that Plaintiff did not hit him with a lock). (Dkt. 1 at 3-4.) He also seeks an injunction to transfer him back to the general population at San Quentin from his current institution, CSP Solano. (*Id.* at 4.)

An essential element of a claim under 42 U.S.C. § 1983 is that the defendant violated a right secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff does not identify what federal law or constitutional right Defendants violated. In limited circumstances, the federal constitutional right to due process affords prisoners certain minimum procedural protections when facing prison disciplinary measures. *Wolff v. McDonnell*, 418 U.S. 539, 556-57, 571-72 n. 19 (1974). To trigger such due process protections, however, the deprivation imposed by prison officials must (1) impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) state action that "will inevitably affect the duration of [a] sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

The evidence in the record does not support a finding that Plaintiff suffered hardships that are "atypical and significant" compared to the ordinary deprivations of prison life. In determining

6

whether a restraint is an "atypical and significant hardship" under *Sandin*, courts "look to three guideposts by which to frame the inquiry: (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). "These factors need not all be present for there to be an atypical and significant hardship." *Palmer v. Salazar*, 2010 WL 5138575 *3 (N.D. Cal. June 19, 1995).

Plaintiff was placed in administrative segregation while the disciplinary charges were pending. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano,* 345 F.3d at 1078. Plaintiff does not present any evidence about the conditions of such segregation. As a result, although it lasted a considerable amount of time, there is no evidence that the conditions exceeded those ordinarily imposed upon inmates in administrative segregation or protective custody.

The other deprivations Plaintiff cites, namely losing work and educational privileges and being transferred to a higher security environment at another prison, are no different from the ordinary hardships of prison life. *See Ward v. Carr,* 467 Fed.Appx. 721 *1 (9th Cir. Feb. 3, 2012) (holding that due process claim failed because the plaintiff did not show that transfer to a different correctional facility posed an atypical or significant hardship); cf. *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (no constitutional right to job in prison); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prisoner has no right to vocational courses, and his liberty interests are sufficiently extinguished that state may transfer him to any of its institutions without offending Constitution).

Finally, the deprivations Plaintiff suffered will not inevitably affect the duration of his confinement because the time credits he initially forfeited were restored to him after the third hearing. As a result, there is no evidence from which a trier of fact could reasonably conclude that the conditions Plaintiff faced as a result of the disciplinary proceedings, including his time in

7

segregation, were "atypical and significant" compared to the ordinary hardships of prison life. Absent such a deprivation, Defendants' actions do not implicate his constitutional right to due process.

Moreover, even if his right to due process were implicated, the shortcomings in Defendants' investigation of the fight would not violate due process. A "professional" investigation of disciplinary charges is not one of the procedural rights guaranteed by due process. *Wolff* established five procedural protections required by the federal constitutional guarantee of due process for inmates facing disciplinary proceedings: (1) adequate written notice of the charges, (2) receipt of written the notice at least 24 hours before the hearing, (3) the ability to call witnesses and present documentary evidence unless doing so will be "unduly hazardous to institutional safety or correctional goals," (4) the factfinder must make a written statement of the evidence relied upon and the reasons behind the disciplinary action, and (5) assistance from a fellow inmate or staff member if the inmate is illiterate or the issues are complex. *Wolff*, 418 U.S. at 566-70. Due process also requires that prison disciplinary findings be supported by some evidence with some indicia of reliability. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (some evidence requirement); *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987) (reliability requirement).

Plaintiff's complaints about Defendants' investigation, including the failure by a number of Defendants to respond more quickly when Plaintiff informed them of Coley's retraction after the second hearing, Officer France's replacement by Officer Valdez following Coley's retraction, and Alvarez's failure to discover that witnesses were on lockdown when they claimed not to have been in their cells at the time of the altercation, are not violations of due process. Plaintiff ultimately received a fair hearing and was disciplined only for the offense that he admits committing -- fighting with another inmate. Plaintiff asserts that if Defendants had conducted a better investigation he would not have had to endure segregation or a transfer to another prison, but this assertion is not supported by any evidence that he would not have been segregated pending investigation into a fighting charge or transferred based on his being found guilty of fighting. More importantly, even if such evidence existed, there is no authority that such alleged

shortcomings in disciplinary investigations by prison officials violate an inmate's federal constitutional right to due process. Absent such authority, Plaintiff's claim that Defendants' were "unprofessional" in investigating the fight does not amount to a due process violation.

The Court notes that the disciplinary records do evince one instance when Plaintiff was not given a procedural protection that due process guarantees: at his second disciplinary hearing he requested two witnesses, Coley and Mainor, but they did not appear.[5] (Dkt. No. 1-1 at 31-32; Opp. at 9.)  As discussed above, because Plaintiff has not proven that a constitutionally protected liberty interest was at issue this omission is immaterial. And, in any event, a violation of procedural due process rights requires only procedural correction, that is, a new hearing, and not a reinstatement of the substantive right. *Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991). Here, prison officials provided procedural correction by vacating the disciplinary findings and giving Plaintiff a new disciplinary hearing. This was the only relief to which he was entitled. While compensatory damages can be obtained if it is determined at the new hearing that the deprivations were not justified, *see id.* at 481 n.5, here Plaintiff was found guilty at the new hearing and it was not determined that the deprivations for which he seeks damages--segregation, loss of a prison job, and transfer to another prison--were unjustified. The only deprivation that was not found justified was the forfeiture of time credits, but prison officials vacated that forfeiture and those time credits were restored to Plaintiff.

//
//

---

[5] Plaintiff's assertion that Arnold did not consider documents Plaintiff submitted at the first hearing does not set forth a second due process violation because Plaintiff does not describe what was in the documents or how they differed from the numerous reports and other documents that Arnold did consider at the hearing. (*See* Opp. at 7-8; Arnold Decl. Exh. A at 4.)

9


# CONCLUSION

The evidence in the record does not create a genuine issue of material fact as to whether Defendants' actions violated Plaintiff's constitutional rights or other provision of federal law. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims.[6]  Defendants' motion for summary judgment (Dkt. No. 28) is GRANTED.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: July 15, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

---

[6] As a result, the Court need not address Defendants' alternative argument for summary judgment on exhaustion grounds.